UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SEDLEY ALLEY, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>GEORGE LITTLE, in his official capacity as )<br>Tennessee's Commissioner of Correction; )<br>RICKY BELL, in his official capacity as Warden, )<br>Riverbend Maximum Security Institution; )<br>JOHN DOE PHYSICIANS 1-100; )<br>JOHN DOE PHARMACISTS 1-100; )<br>JOHN DOE MEDICAL PERSONNEL 1-100; )<br>JOHN DOE EXECUTIONERS 1-100; and )<br>JOHN DOES 1-100, )<br>)<br>    Defendants. ) | Case No. 3:06-0340<br>Judge Trauger |

## MEMORANDUM

Pending before the court is the Motion to Dismiss filed by defendants George Little and Ricky Bell (Docket No. 15), to which the plaintiff has responded (Docket No. 19), and the defendants have replied (Docket No. 20). For the reasons discussed herein, the defendants' motion will be held in abeyance pending the United States Supreme Court's decision in *Hill v. McDonough*, No. 05-8794 (U.S. argued Apr. 26, 2006).

1

## FACTS and PROCEDURAL HISTORY

The plaintiff is a condemned inmate at Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee.[1]  His execution is scheduled for 1:00 a.m. on May 17, 2006.

Tennessee law allows executions to occur through either electrocution or lethal injection. On March 30, 2006, the plaintiff informed Commissioner George Little that he objected to the state's lethal injection protocol.  On April 13, 2006, Commissioner Little, asserting that "the grounds on which [the plaintiff] challenge[s] the department's lethal injection protocol have been considered and rejected by the Tennessee [c]ourts," rejected any challenge by the plaintiff to the protocol.  (*See* Docket No. 19, Ex. 3.)  On April 16, 2006, an affidavit was presented to the plaintiff informing him that he had "the option of electing electrocution over lethal injection as the method of [his] execution."  (*See* Docket No. 16, Ex. 1.)  The plaintiff refused to make a choice or to sign the affidavit.  (*See id.*)  His refusal to select one method over the other meant that he would be executed by lethal injection, the presumptive manner of execution in Tennessee.

The lethal injection protocol established in 1998 by the Tennessee Department of Correction ("TDOC") prescribes the sequence of events that must take place during an execution by lethal injection, such as the plaintiff's.  Under this protocol, Warden Ricky Bell or his deputy warden, accompanied by an "extraction team,[2]" will, at an appointed time, remove the plaintiff from his cell, secure him to a gurney, and take him to a designated area in the "death chamber," where the execution is to take place. (Docket No. 1 ¶ 23.)  Intravenous ("IV") technicians then

---

[1] Unless otherwise noted, all facts have been drawn from the plaintiff's Complaint (Docket No. 1) and from his Response to Motion to Dismiss of Defendants Little and Bell (Docket No. 19).

[2] The protocol is silent as to how this team is to be selected and whether its members are to have any special training or qualifications.

2

will insert a catheter into each of the plaintiff's arms and leave the chamber.[3] Warden Bell, his deputy, and a chaplain will remain.

Tubes attached to the catheters in the plaintiff's arms will run into a room next to the death chamber, where the executioner will be waiting.[4] (*See* Docket No. 16 at 11.) The executioner will be able to view the plaintiff on a monitor via a camera positioned above the gurney. (*See id.*) On the warden's signal, the executioner will inject the following drugs into the tubes in the amount and sequence indicated:

1. sodium pentothal (also known as sodium thiopental): fifty milliliters (five grams diluted by forty-eight milliliters of diluent);
2. saline: fifty milliliters;
3. pancuronium bromide (also known as Pavulon): fifty milliliters;
4. pancuronium bromide (also known as Pavulon): fifty milliliters;
5. saline: fifty milliliters;
6. potassium chloride: fifty milliliters; and
7. potassium chloride: fifty milliliters.

The syringes containing these drugs will be prepared by Warden Bell, who has no medical training. All drugs are to be administered within a span of two to two and one-half minutes and will have been obtained per Warden Bell's request to the TDOC. Five minutes after the drugs

---

[3] A physician who is able to perform a "cutdown procedure" if the IV technicians are unable to find an adequate vein in which to insert the catheters is to be waiting in a designated area. (*See* Docket No. 1 ¶ 25.) The protocol is silent as to whether this physician must have any particular qualifications.

[4] The executioner is not a doctor, nor is he or she required to have any particular training–medical or otherwise–or qualifications. (*See* Docket No. 11 at 2 n.3; Docket No. 1 ¶ 22.)

have been injected into the tubes, a physician will examine the plaintiff and pronounce whether he has died. (*See id.* at 12.)

According to the plaintiff,[5] sodium pentothal, the first drug in the sequence, is a barbiturate used for its alleged anesthetic effects. While it takes effect quickly, the drug also wears off "in a matter of minutes." (*See* Docket No. 1 ¶ 39.) It is used when performing surgeries because it enables an anesthesiologist quickly to awaken a patient, should surgical complications arise. The plaintiff claims that, when administered according to the Tennessee protocol, this drug does not completely anesthetize an inmate undergoing lethal injection.

The second drug, pancuronium bromide, is a neuromuscular blocking agent that paralyzes an individual but does not affect his brain or nervous system. Accordingly, it does not impact consciousness or the ability to think or to feel pain. It does, however, paralyze the diaphragm, which makes breathing impossible. It also paralyzes all skeletal muscles, including those in an individual's face, such that an individual who has been injected with this drug would be unable to express pain or terror, should he experience it. Tennessee has prohibited the use of pancuronium bromide in the euthanizing of animals. The plaintiff claims that the suffocation that results from the use of this drug is the actual cause of death in an inmate executed under the protocol.

Potassium chloride, the third drug, is used to cause cardiac arrest. Because it activates all nerve fibers in the venous system, this drug, used alone, produces extremely painful effects. The plaintiff asserts that, because inmates executed under the protocol are not adequately

---

[5]All descriptions of the drugs used during the lethal injection protocol are per the plaintiff's depictions. (*See* Docket No. 1 ¶¶ 36-74.) Similar descriptions have been used, however, in prior cases involving the same drugs. *See, e.g., Morales v. Hickman*, 438 F.3d 926, 928-29 (9th Cir. 2006); *Hill v. Crosby*, No. 4:06-CV-032-SPM, 2006 WL 167585, at *2 (N.D. Fla. Jan. 21, 2006) (slip op.); *Abdur'Rahman v. Bredesen*, 181 S.W.3d 292, 302 (Tenn. 2005).

4

anaesthetized, they experience this pain before they die.

In 1989, the Tennessee Supreme Court affirmed the plaintiff's death sentence. On January 14, 2004, that court set for the plaintiff a June 3, 2004 execution date. On May 19, 2004, the United States District Court for the Western District of Tennessee granted his request for a stay of execution based on a then-pending Sixth Circuit decision regarding the proper treatment of certain motions in habeas cases. (*See* Docket No. 16 at 4.) Following the resolution of these issues, the Tennessee Supreme Court, on March 29, 2006, set the plaintiff's current execution date. Using § 1983 as the vehicle for his claims, he brought this challenge to Tennessee's lethal injection protocol on April 11, 2006.

**MEMORANDUM**

The United States Supreme Court heard oral arguments on April 26, 2006 in *Hill v. McDonough*. *See Hill v. McDonough*, No. 05-8794 (U.S. argued Apr. 26, 2006). At issue in *Hill* is whether a death-sentenced inmate may use § 1983 to challenge the lethal injection protocol to be used during his execution or whether his claim instead must be recharacterized as a habeas corpus petition. *See id.*, Brief of Respondent at I; *see also* 42 U.S.C. § 1983 (2000). Although the defendants in the case at hand have recognized that *Hill* is directly relevant to whether the plaintiff's current formulation of his claim is permissible, they "assume *arguendo*" that it is. (*See* Docket No. 16 at 5 n.4) The defendants' assumption, however, does not permit this court to ignore clear Sixth Circuit precedent to the contrary.

The Sixth Circuit explicitly has determined that "a challenge to a method of execution, whatever denominated . . . is to be treated as a habeas petition." *See In re Sapp*, 118 F.3d 460, 464 (1997); *see also In re Williams*, 359 F.3d 811, 812 (6th Cir. 2004) ("The § 1983 action

5

challenging the method of administering drugs at [an inmate's] execution is . . . to be treated as a second habeas action under current Sixth Circuit decisions."). Accordingly, under existing precedent, the court here would need to treat the plaintiff's § 1983 challenge to Tennessee's lethal injection protocol as a habeas action.

This court is mindful, however, of numerous instances when the Sixth Circuit has directed a district court to hold a claim in abeyance once the Supreme Court has granted certiorari on the issue facing the lower court. *See, e.g.*, *Figel v. Overton*, 121 Fed. App'x 642, 647 (6th Cir. 2005); *Ullmann v. Ohio Bureau of Employment Servs.*, No. 98-3390, 1999 WL 1204768, at *3 (6th Cir. Dec. 13, 1999) (unpublished). Here, because the Supreme Court not only has granted certiorari on the relevant issue facing this court, *see Hill v. Crosby*, 126 S. Ct. 1189 (2006) (granting certiorari), but also has heard arguments thereon, *see Hill v. McDonough*, No. 05-8794 (U.S. argued Apr. 26, 2006), holding the case in abeyance is particularly appropriate.

Because the defendants assumed *arguendo* that the plaintiff properly brought his claim under § 1983, the plaintiff did not need to attempt to show that, if converted to a habeas petition, his claim would survive. Accordingly, were this court to convert the plaintiff's claim, he may be precluded from seeking relief. *See In re Williams*, 358 F.3d at 813 (denying an inmate's method-of-execution challenge upon its conversion to a habeas action after finding that "petitioner does not seriously claim it meets the requirements for a second petition"). While the Sixth Circuit has chosen the conversion option in the past, even despite the Supreme Court's grant of certiorari on the relevant issue, it does not appear to have done so once the case has actually been argued. *See id.* (rejecting an inmate's request for a stay of execution, despite the Supreme Court's having granted certiorari on *Nelson v. Campbell*, 540 U.S. 1046 (2003), which was to have addressed the same question now at issue in *Hill*).

6

With a decision rapidly approaching as to whether § 1983 claims must be converted to habeas actions, the court will wait for guidance from the Supreme Court before determining whether such a conversion is appropriate for the plaintiff's claim. *See Ohio Envtl. Council v. S.D. Ohio*, 565 F.2d 393, 396 (6th Cir. 1977) (noting that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel, and for litigants") (internal quotation omitted); Stephen Henderson, *Justices Appear Split on Lethal-Injection Case; A Fla. Inmate Says Injection Could Cause Great Pain and is Thus Unconstitutionally Cruel*, The Phila. Inquirer, April 27, 2006, at A12 (noting that a decision in *Hill* is anticipated by June 2006). Accordingly, the court will hold this case in abeyance pending a decision in *Hill*.

## CONCLUSION

The defendants' Motion to Dismiss will be held in abeyance pending the Supreme Court's decision in *Hill v. McDonough*, No. 05-8794 (U.S. argued Apr. 26, 2006). A stay of execution will not issue at this time.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge